UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALBERT SHADE, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-1774 (PLF) |
| UNITED STATES CONGRESS, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

Plaintiff Albert Shade initiated this *pro se* action on behalf of himself and six other plaintiffs, apparently seeking redress for alleged discrimination by the United States Department of Agriculture ("USDA").[1]  The four named defendants are "Congress," "Government," the U.S. House of Representatives, and Secretary of Agriculture Tom Vilsack. This matter is before the Court on the defendants' motions to dismiss the plaintiffs' complaints under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Upon consideration of the parties' papers and the relevant law, the Court will grant the defendants' motions and will dismiss the plaintiffs' complaints.[2]

---

[1]    The plaintiffs have submitted seven identical complaints, each with similar exhibits.  While Mr. Shade's complaint was docketed by the Clerk's Office as a complaint, see Dkt. No. 1, the other six complaints were docketed as attachments to Mr. Shade's complaint. See Dkt. Nos. 1-1 through 1-6.

[2]    The papers considered in connection with this matter include the following: plaintiff Albert Shade's complaint ("Compl.") [Dkt. No. 1]; plaintiff Maggie Hill's complaint [Dkt. No. 1-1]; plaintiff Ninenette Brutley's complaint [Dkt. No. 1-2]; plaintiff Huston Smith's complaint [Dkt. No. 1-3]; plaintiff Carrie Smith's complaint [Dkt. No. 1-4]; plaintiff Mary L. Smith's complaint [Dkt. No. 1-5]; plaintiff Mary F. Daniels' complaint [Dkt. No. 1-6]; the exhibit to the plaintiffs' complaints ("Ex. 1") [Dkt. No. 1-8]; the motion to dismiss by defendants

I.  BACKGROUND

Each of the seven plaintiffs has submitted an identical one-page, handwritten complaint.  Every complaint is a photocopy of the same handwritten document, with only the name of the individual plaintiff altered.  Included with each of these complaints are copies of pages from a variety of records, including documents from Mr. Shade's adjudication in the non-judicial claims resolution process established by the Consent Decree in Pigford v. Glickman, Civil Action No. 97-1978 (D.D.C.).  Unlike the six other complaints, Mr. Shade's complaint contains a second page that elaborates on the nature of the claims presented.  Each of the other complaints is accompanied by a copy of a different handwritten page that purports to be written by an individual who "in 1982 leased 12 acres of land" to that plaintiff, who "had 18 head of cattle on [the writer's] land"; the name of the person who purportedly was leased this land has been changed in each of these photocopied pages to match the individual plaintiff.  See, e.g., Dkt. No. 1-1 at 3; Dkt. No. 1-2 at 2.[3]  The plaintiffs also have submitted, along with their complaints, an eighty-page exhibit that appears to consist partly or entirely of a mailing sent to an official at USDA.  See Ex. 1.  Like the individual complaints and the pages attached to them, this exhibit contains handwritten pages interspersed with photocopied pages from various official documents and news articles, some annotated by hand.  Many of the handwritten pages in the exhibit appear as if they could be intended as continuations of Mr. Shade's complaint.

---

Congress and the U.S. House of Representatives ("Congr. Defs.' Mot.") [Dkt. No. 16]; the motion to dismiss by defendant United States (*i.e.*, "Government") and Tom Vilsack ("United States' Mot.") [Dkt. No. 17]; the plaintiffs' memorandum in opposition to the defendants' motions to dismiss ("Opp.") [Dkt. No. 19]; and the reply to the plaintiffs' opposition by defendants Congress and the U.S. House of Representatives ("Reply") [Dkt. No. 20].

[3]     Throughout this Memorandum Opinion, page numbers for the plaintiffs' filings refer to the numbers generated by the Court's ECF filing system.

As the defendants have noted in their motions to dismiss, the plaintiffs' filings are nearly impossible to understand. Reading these filings carefully, however, and mindful of the liberal standards accorded to submissions by *pro se* parties, the Court discerns the following.

In 1999, Mr. Shade participated as a plaintiff in the non-judicial claims resolution process established by the Consent Decree in Pigford v. Glickman. See Ex. 1 at 39-40, 44, 54, 72-74. In support of his claim, he seems to have alleged that in 1982 he was denied farm operating loans for discriminatory reasons by USDA. Id. at 72-74. It appears that Mr. Shade prevailed in his claim and was awarded $50,000 — the standard payment for the type of claim that he filed. See id. at 53, 57-58. None of the other plaintiffs allege or furnish records showing whether or not they also were Pigford claimants. The plaintiffs allege, however, that the defendants "are causing up to the present[,] pain-suffering and mental anguish . . . due to this black farmers issue-ordeal way over a decade." Compl. at 1. They state that they have filed this "discrimination[,] bias, racism action" to request "relief and [to] settle this racism racial bias with malice against [the] plaintiff[s]." Id. at 1-2. The defendants allegedly "refuse to pay monies owe[d]" to the plaintiffs "for over a decade." Id. at 2. The plaintiffs assert that the defendants' actions violate the Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution. Id.

With respect to Mr. Shade, a generous reading of the filings suggests that he believes the $50,000 payment he received in Pigford was inadequate to cover the actual economic damages that he suffered as a result of USDA's discrimination. See Ex. 1 at 62. He appears to seek damages of $350,000 for his alleged injuries. Id. at 78. As for the other plaintiffs, it is impossible to ascertain from the filings precisely what conduct by USDA or any other government agency or official caused their alleged injuries, or what those injuries are.

## II.  LEGAL STANDARDS

### A.  *Motion to Dismiss under Rule 12(b)(1)*

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained either in the Constitution or in an act of Congress.  See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Tabman v. FBI, 718 F. Supp. 2d 98, 100 (D.D.C. 2010).  On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that the Court has jurisdiction.  See Tabman v. FBI, 718 F. Supp. 2d at 100; Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004).  In determining whether to grant such a motion, the Court must construe the complaint in the plaintiff's favor and treat all well-pled allegations of fact as true.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  But the Court need not accept unsupported inferences or legal conclusions cast as factual allegations.  See Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003).  Under Rule 12(b)(1), the Court may dispose of the motion on the basis of the complaint alone or it may consider materials beyond the pleadings "as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  Scolaro v. D.C. Board of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003).

### B.  *Motion to Dismiss under Rule 12(b)(6)*

Rule 12(b)(6) allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Although "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Papasan v. Allain, 478 U.S. 265, 286 (1986). On such a motion, the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See id.; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 678).

### III. DISCUSSION

The defendants' motions must be granted — and the plaintiffs' complaints dismissed — for several reasons: The United States is shielded from this lawsuit by sovereign immunity, and the two Congressional defendants by the Speech and Debate Clause of the United States Constitution. Furthermore, the plaintiffs have not alleged any injury sufficiently concrete or traceable to conduct by the United States, Congress, or the House of Representatives to provide standing to sue those defendants, nor have the plaintiffs offered any allegations specific enough to state a plausible claim against them. The only potentially discernible claim presented

in the complaints — an allegation of racially biased credit discrimination by USDA in 1982 — is barred by the applicable statute of limitations and the Consent Decree in Pigford v. Glickman.

The United States is immune from suit unless it waives its sovereign immunity through an act of Congress.  See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  Such a waiver must be "unequivocally expressed" in the relevant statute.  United States v. Wade, 255 F.3d 833, 836 (D.C. Cir. 2001) (quoting Hubbard v. EPA, 982 F.2d 531, 532 (D.C. Cir. 1992)).  The plaintiffs have identified no waiver of sovereign immunity that permits their claims against the United States, and those claims therefore are barred and must be dismissed.

As for "Congress" and the U.S. House of Representatives, the plaintiffs' claims are precluded by the Speech and Debate Clause of the United States Constitution, which provides absolute immunity to the members of Congress against any claim that is based on their legislative activities.  See U.S. Const., art. I, § 6, cl. 1; Eastland v. U. S. Servicemen's Fund, 421 U.S. 491, 502-03 (1975); Newdow v. Congress, 328 F.3d 466, 484 (9th Cir. 2003), rev'd on other grounds, 542 U.S. 1 (2004).  Even under the most liberal interpretation of the plaintiffs' complaints and exhibits, they make no allegations against Congress or the House of Representatives based on anything other than the appropriation of funds — a core legislative function.  The Speech and Debate Clause, which protects activities that are "clearly a part of the legislative process," Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 415 (D.C. Cir. 1995), therefore bars the plaintiffs' claims against these two defendants.

The plaintiffs also have not demonstrated that they have standing to bring this lawsuit against the United States, Congress, or the House of Representatives.  To establish standing, a plaintiff must allege an "actual or imminent" injury that is "concrete and particularized," as well as "fairly traceable to [a] challenged action of the defendant" and likely

to be redressed by a favorable court decision.  <u>In re Navy Chaplaincy</u>, 534 F.3d 756, 759-60 (D.C. Cir. 2008) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  The most that can be gleaned from the plaintiffs' complaints is that they object to racial bias of some unspecified sort at USDA, or perhaps to some aspect of the Department's conduct arising out of the <u>Pigford</u> case.  The plaintiffs have alleged no injury caused by the United States, Congress, or the House of Representatives.  Nor have they described any purportedly unlawful conduct by those defendants.  Having failed to specify what their injuries are, or precisely what conduct by the defendants caused those injuries, the plaintiffs also have failed to allege "a fairly traceable connection between [their] injury and the complained-of conduct of the defendant[s]."  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103 (1998).

       For similar reasons, the plaintiffs' complaints fail to state a claim upon which relief can be granted.  Surviving a motion to dismiss under Rule 12(b)(6) requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 547.  The plaintiffs' complaints, however, offer virtually no specific factual allegations at all: no government officials are identified, nor do the complaints (with one exception discussed below) cite any particular conduct by the defendants upon which their allegations of discrimination are founded.  Thus, the complaints offer mere "labels and conclusions," <u>id</u>. at 555, which are cast at a level of generality to which it would be impossible for the defendants to answer.

       The lone exception, and the only specific grievance that emerges from the complaint, is that plaintiff Albert Shade (as explained above) appears to believe that the payment he received as a prevailing claimant in <u>Pigford v. Glickman</u> was insufficient to cover his damages.  This interpretation is reinforced by the papers that Mr. Shade has filed in opposition to

7

the defendants' motions to dismiss, which state that he is asking the Court to "order the Government et al. to [pay] my debt owed him for economic damages done to him and not paying plaintiff, Albert L. Shade, monies in full for damages done to him the year of 1982 cause[d] by a U.S.D.A. representative in Barbour County Alabama court house." Opp. at 3; see also id. at 29 (stating that Mr. Shade was "told by a representative for U.S.D.A. that no funds were available" when "the representative [then] approved and granted two white neighboring farmer's loans in my presence").

Under the Pigford Consent Decree, however, participants in the claims resolution process who — like Mr. Shade — selected the "Track A" adjudication option (which imposed a fairly low burden of proof) recovered $50,000 in compensation if they prevailed, regardless of their actual damages. See Pigford v. Glickman, 185 F.R.D. 82, 96-97 (D.D.C. 1999). Claimants who wished to recover their actual damages could select the "Track B" arbitration option, which imposed a higher burden of proof but which entitled prevailing claimants to their actual damages. Id. at 97. Decisions in both Track A adjudications and Track B arbitrations were final, subject only to limited review, by a different court-appointed neutral party, for a "clear and manifest error" that was "likely to result in a fundamental miscarriage of justice." Id. at 108. Having voluntarily selected the "Track A" option and having received payment after prevailing on his claim, Mr. Shade has no legal basis on which to seek more money from USDA for the same act of discrimination.

Nor is there any legal basis for Mr. Shade, or for any of the other plaintiffs here, to sue USDA outside of the Pigford Consent Decree for discriminatory lending that occurred in 1982. The statute on which the claims in Pigford were based, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, has a two-year statute of limitations. Although Congress later enacted a

temporary waiver of that statute of limitations, that extension has long since expired. See Pigford v. Glickman, 185 F.R.D. at 90.  In addition, individuals whose alleged injuries made them members of the plaintiffs' class that was certified in Pigford, and who did not opt out of that class, are bound by the Consent Decree.  See id. at 95.  Under the Consent Decree, claimants agreed "to forever waive their right to seek review in any court or before any tribunal of the decision of the adjudicator with respect to any claim that is, or could have been decided by the adjudicator."  Consent Decree ¶ 9(a)(v), Pigford v. Glickman, Civil Action No. 97-1978 (D.D.C. Apr. 14, 1999).  In sum, whether or not these plaintiffs took part in Pigford, no statutory authority provides a cause of action for any claims relating to lending in the 1980s.  Nor do the Eighth, Thirteenth, or Fourteenth Amendments to the United States Constitution.

Thus, the one claim that conceivably can be discerned in the plaintiffs' complaints, insofar as that claim can be understood by the Court, is definitively foreclosed by the relevant law.  Because this claim marks the only place where the plaintiffs have even arguably pled a concrete injury traceable to specific conduct by a defendant, and the only place where they have even arguably stated a claim for relief that is plausible on its face, the complaints have no apparent basis in law or fact and the plaintiffs cannot possibly win relief.  Their complaints therefore must be dismissed.

## IV.  CONCLUSION

For the reasons explained above, the plaintiffs' complaints against all defendants will be dismissed.  An Order consistent with this Memorandum Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  April 19, 2013                    United States District Judge